UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:15CR00149 (AWT) |
| | : | |
| v. | : | |
| | : | |
| ERIC BERGENN | : | February 21, 2019 |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The Government respectfully submits this Sentencing Memorandum in aid of the sentencing hearing of the defendant, Eric Bergenn (the "Defendant"). As discussed herein, the Court should impose a prison sentence.

**I.   INTRODUCTION AND BACKGROUND**

On or about August 19, 2015, a Federal Grand Jury returned a fifteen-count Indictment against the defendant Eric Bergenn and his son, Arthur Bergenn. The Indictment charged Eric Bergenn with conspiracy to distribute marijuana, conspiracy to commit money laundering, money laundering and structuring financial transactions. On April 19, 2018, the defendant pled guilty to Count One of the Indictment, charging him with conspiracy to distribute and to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(D), and Count Two of the Indictment, charging him with conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h). Eric Bergenn's guilty plea was entered in accordance with a plea agreement with the Government.

In that agreement, the parties agreed that pursuant to U.S.S.G. § 3D1.2, Count One and Count Two are grouped together because the conduct involved in Count One is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to Count Two. The parties agreed that the offense level applicable to the Group is the offense level associated with

1

Count Two, pursuant to U.S.S.G. § 3D1.3. With respect to Count One, the parties agreed that the drug quantities which form the basis of the offense to which he is pleading guilty and the defendant's relevant and readily foreseeable conduct is at least 60 kilograms, but less than 80 kilograms, of marijuana. This yields a base offense level of 20 pursuant to U.S.S.G. § 2D1.1(c)(10). Two levels are subtracted because the defendant satisfies the "safety valve" criteria set forth in U.S.S.G. § 5C1.2. This results in an offense level of 18. With respect to Count Two, the defendant's base offense level under U.S.S.G. §§ 2S1.1(a)(1) is 18. Two levels are added under U.S.S.G. § 2S1.1(b)(2)(B) because the defendant is convicted under 18 U.S.C. § 1956(h). Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total offense level of 17. With an adjusted offense level of 17 and a Criminal History Category I, the defendant's Guideline range would be 24 to 30 months of imprisonment and a fine range of $10,000 to $500,000. A total offense level of 17 and a Criminal History Category of I result in a Guideline imprisonment range of 24 to 30 months of imprisonment and a Guideline fine range of $10,000 to $500,000.

  As part of the plea agreement, the defendant agreed to forfeit his interest in the following properties: (1) the real property located at 20635 Canal View Road, Corning, California; (2) the real property located at 15950 N. Mendocino Drive, Corning, California; and (3) approximately 160 acres of land identified by Tehama County, California Assessor's Parcel Number 001210321 located off of Vestal Road in Corning, California. In the plea agreement, the defendant acknowledged that this property is forfeitable as property which was used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the conspiracy to distribute and to possess with intent to distribute marijuana, as charged in Count One of the Indictment. In

addition, the defendant acknowledged that this property is forfeitable as property that was involved in the conspiracy to engage in money laundering or is traceable to property involved in the conspiracy to engage in money laundering, as charged in Count Two of the Indictment

The parties agreed that both parties reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their rights to object to a departure or a non-Guidelines sentence. After sentencing, the government will move to dismiss Counts Three through Fifteen of the Indictment as to the defendant.

The defendant agreed not to appeal or collaterally attack his conviction in any proceeding. In addition, the defendant agreed not to appeal or collaterally attack his sentence if his sentence does not exceed 37 months' imprisonment, 3 years of supervised release, a $500,000 fine and a $200 special assessment, even if the Court imposes such a sentence based on an analysis different from that specified above.

## II.     **FACTS AND CIRCUMSTANCES OF DEFENDANT'S CONDUCT**

### A. **Overview of the Illegal Activity**

In February 2014, the DEA and IRS-CI began an investigation of Arthur Bergenn and his father, Eric Bergenn, for alleged money laundering and for the illegal manufacture and distribution of marijuana. The investigation revealed that Arthur Bergenn moved to California and began purchasing large quantities of marijuana. Arthur would ship the marijuana via the U.S. Postal Service ("USPS") to co-conspirators in Connecticut, who would sell the marijuana for profit. The cash proceeds from the sale of the marijuana were deposited in structured amounts into domestic bank accounts held by Eric and Arthur Bergenn. The structured deposits occurred in Connecticut. After the proceeds were deposited in Connecticut, the funds typically were withdrawn by Arthur

Bergenn in structured amounts from bank branches in California or were transferred to other accounts held by Arthur or Eric Bergenn. In addition, Eric mailed bulk amounts of cash through the USPS to Arthur in California. The cash proceeds were used to finance the marijuana operation. As the marijuana operation grew, Arthur used marijuana proceeds to purchase three properties in Tehama County, California, which Arthur used to operate marijuana grows.

### B. Marijuana Trafficking

During this investigation, investigators interviewed at least nine cooperating sources who provided information, in substance, that Arthur Bergenn was growing large quantities of high-grade marijuana at three properties that he owned in northern California and that Arthur Bergenn regularly shipped the marijuana to co-conspirators in Connecticut – including Eric Bergenn – where the marijuana was sold for profit.

On October 18, 2013 Arthur Bergenn was arrested by the Tehama Inter-Agency Drug Enforcement task force for possession of marijuana with intent to distribute. Arthur Bergenn was arrested pursuant to a traffic stop, during which Arthur's passenger said that there was marijuana in the trunk of the vehicle. Officers searched the car and seized sixteen one-pound bags of marijuana in the trunk of Arthur's car.

In 2012 and 2013, Arthur Bergenn purchased the following three properties in California for cash: (1) in February 2012, Arthur purchased 20635 Canal View Road in Corning, CA for $55,000 in cash; (2) in November 2012, Arthur purchased 15950 N. Mendocino Drive in Corning, CA for $40,000 in cash; and (3) in March 2013, Arthur purchased 160 acres of undeveloped land on Vestal Road in Tehama County, CA for $85,000 in cash. Based on financial records, witness interviews and other evidence, Arthur Bergenn had no legitimate employment or source of income.

Analyses of Arthur's bank records, along with witness interviews, reveal that Arthur used marijuana proceeds to purchase these properties.

Arthur used these three properties to manufactures large quantities of marijuana. On three occasions between May and August 2014, investigators in California conducted aerial reconnaissance of Arthur Bergenn's three properties in Tehama County, CA. Investigators identified marijuana plants being grown at each location.

On August 11, 2014, members of the DEA and other law enforcement personnel executed search warrants at the three properties owned by Arthur Bergenn in Tehama County, California. During the search of the property at 20635 Canal View Road, investigators seized, among other evidence, the following: twelve marijuana plants; 1,011 grams marijuana bud; twenty pounds of processed marijuana; a digital scale; four vacuum sealers; identification documents for three individuals; pictures; bank receipts; financial documents; an XPS laptop; multiple cellphones; documents; receipts; and $1400 in U.S. Currency.

When investigators executed the search warrant at the property at 15950 N. Mendocino Drive, investigators found Arthur Bergenn, Eric Bergenn and Roger Morgan at the property. During the search of 15950 N. Mendocino Drive, investigators seized, among other evidence, the following: approximately one-hundred thirty-nine marijuana plants; approximately thirty-six pounds of processed marijuana; approximately three-hundred two grams of hashish; packing supplies; scales; bank documents; drug ledgers; four long guns; a loaded .44 caliber handgun; multiple cell phones; indicia of Arthur Bergenn's use/ownership of the premises and four computers. Incident to the search, California agents arrested Arthur Bergenn, Eric Bergenn and Roger Morgan for possession/manufacture of marijuana and related California state offenses.

These state charges were later dismissed in light of the federal prosecution.

When investigators searched the Vestal Road Ranch, they arrested Eric John Molloy and Esperanza Sabrina McClauglin at the property. During the search of the Vestal Road Ranch, investigators seized, among other evidence, the following: approximately 150 mature high grade marijuana plants; a quart bag of marijuana; a Marlin 30-30 lever action rifle; indicia of Eric Molloy staying at the property; multiple cell phones; indicia of Esperanza McClaughlin staying at the property; a daily planner and notebook; U.S. Airline tickets; a Hummingbird Marine radio; U.S. Currency; and a Samsung computer. Molloy and McClaughlin both waived their *Miranda* rights and separately told investigators, in substance, that they were recruited by Arthur Bergenn and paid in marijuana by Arthur to cultivate the marijuana plants on Arthur's Vestal Road Ranch. In addition, Molloy said that the Marlin rifle belonged to Arthur Bergenn.

The investigation revealed that Eric Bergenn knew that his son, Arthur Bergenn, initially purchased marijuana in California and later cultivated his own marijuana in California. Eric knew that Arthur was using property that Arthur had acquired in California to cultivate marijuana and that after Arthur acquired the property at 20635 Canal View Road, Arthur was acquiring additional property (i.e., 15950 N. Mendocino Dr. and later the 160 acres on Vestal Road in Tehama County) to grow marijuana. During the conspiracy period, Eric Bergenn regularly transferred cash proceeds to Arthur Bergenn, knowing that the property was used by Arthur Bergenn to purchase property and to purchase materials and equipment used to grow marijuana.

C. **Money Laundering Activity**

The investigation revealed that Eric and Arthur Bergenn transferred marijuana proceeds through financial accounts held by Eric and Arthur Bergenn in structured amounts. In addition,

this money was used by Arthur to finance Arthur's purchase of property, equipment and materials used to grow marijuana. Bank records for accounts controlled by Eric and Arthur Bergenn demonstrate that between April 2010 and June 2014 they had unexplained cash deposits of more than $1.2 million. The Bergenns have utilized twelve separate accounts at six different financial institutions. None of the cash deposits or subsequent withdrawals exceeded the Currency Transaction Reporting (CTR) threshold of ten thousand dollars. Based on evidence developed during this case, the Bergenns spread out financial transactions across numerous accounts and at various financial institutions and conducted transactions below the CTR threshold in an apparent attempt to evade scrutiny and disguise the volume and source of the cash.

The records show that Eric and Arthur Bergenn began making frequent large cash deposits into their respective bank accounts starting in April 2010. Further investigation showed that Eric was making many of the deposits into Arthur's account in Connecticut and that Arthur would make subsequent cash withdrawals from California. Between April 2010 and February 2012, cash deposits into Eric's and Arthur's Bank of America accounts totaled at least $497,620. As noted above, none of the transactions exceeded the CTR threshold of $10,000. Examples of structured deposits include the following:

| Date | Bank | Account | Amount |
|---|---|---|---|
| 08/18/2010 | Bank of America | 9514211754 | $9,000 |
| 08/19/2010 | Bank of America | 9514211754 | $7,000 |
| 08/20/2010 | Bank of America | 9514211754 | $8,000 |
| 08/20/2010 | Bank of America | 9514211754 | $4,000 |
| 09/04/2012 | First Niagara Bank | 90004433221 | $9,000 |
| 09/04/2012 | The Savings Institute | 9860004267192 | $9,900 |
| 09/04/2012 | Liberty Bank | 6574179628 | $9,500 |

7

In February 2012, Bank of America closed the Bergenns' accounts because of the suspicious transactions. The Bergenns then opened accounts at JPMorgan Chase Bank, First Niagara Bank, The Savings Institute Bank and Trust, Liberty Bank and Wells Fargo Bank. Bank records show that the Bergenns spread their transactions out across multiple accounts and multiple banks, in an apparent attempt to evade CTR reporting. For example, on September 13, 2012, Eric Bergenn deposited $7,000 into his First Niagara account, $7,000 into his Savings Institute account, and $9,000 into his Liberty Bank account.

A review of Arthur's accounts reveals the lack of any direct deposits or other deposits that appear to be a pay check or salary. According to a cooperating source (referred to herein as "CS-1"), Arthur said that he drove to different ATM's to make cash deposits so that bank tellers would not inquire where the cash came from, since Arthur did not have a job.

Bank records show that Arthur's withdrawals never exceeded the CTR threshold of $10,000, and that Arthur appeared to structure withdrawals to avoid CTR reports. For example, on September 15, 2011, Arthur withdrew $6,000 from his Bank of America account ending in 9719 in Arcata, CA and withdrew $9,100 from the same account in Eureka, CA. On October 20, 2011, Arthur withdrew $7,000 from his Bank of America account ending in 9514 in Henderson Center, CA and $7,700 from his Bank of America account ending in 9719 in Eureka, CA.

The cash withdrawals for 2012 and 2013 are significantly less than the other years due to the fact that Arthur used cash to purchase the three properties in California as follows: 20635 Canal View Road in Corning, CA for $55,000; 15950 N. Mendocino Drive in Corning, CA for $40,000; and the Vestal Road ranch in Tehama County, CA for $85,000. The majority of the

other cash deposited into the accounts was spent on purchasing items, day-to-day living expenses and other miscellaneous expenses.

In addition to the cash deposits and cash withdrawals, there is evidence that Eric Bergenn shipped cash through the U.S. Postal Service to Arthur in California.  CS-1 said that when he was assisting Arthur harvesting marijuana in California, Arthur would regularly receive boxes containing cash from Eric.  Arthur Bergenn told CS-1 that the cash was from Arthur's father and was from the sale of marijuana in Connecticut.  CS-1 told investigators that on multiple occasions, Arthur received boxes containing ten thousand to fifteen thousand dollars.  CS-1 also said that he overheard conversations between Arthur and Eric concerning the marijuana business and shipments of money.

****

In sum, the evidence shows that Eric Bergenn conspired with his son, Arthur Bergenn, and others to distribute marijuana and to engage in money laundering.   In addition, the evidence shows that that his relevant and reasonably foreseeable offense conduct involved at least 60 kilograms, but less than 80 kilograms, of marijuana

### III. THE COURT SHOULD IMPOSE A GUIDELINE SENTENCE.

The Government respectfully submits that the Court should impose a sentence of imprisonment.  The Court should impose a prison sentence to reflect the seriousness of the defendant's offense conduct.  The DEA and IRS-CI began an investigation of Eric Bergenn and his son Arthur Bergenn for alleged money laundering and illegal distribution of narcotics, specifically marijuana.  The investigation revealed that since at least early 2010, Eric Bergenn and Arthur Bergenn have been operating a multi-state marijuana distribution and money

9

laundering organization. The investigation revealed that Arthur Bergenn moved to California and began purchasing large quantities of marijuana. Arthur would ship the marijuana via the U.S. Postal Service to willing recipients in Connecticut who would be compensated for delivering the packages to his father, Eric Bergenn. The marijuana was distributed in Connecticut. The cash proceeds from the sale of the marijuana were deposited in structured amounts into domestic bank accounts held by Eric and Arthur Bergenn. The structured deposits occurred in Connecticut. After the proceeds were deposited in Connecticut, the funds typically were withdrawn in structured amounts from bank branches in California or were transferred to other accounts. In addition, Eric mailed bulk cash shipments of marijuana proceeds through the USPS to Arthur in California. The marijuana proceeds were used to finance their marijuana operation and their money laundering activities. As the Bergenns' operation grew, Arthur used marijuana proceeds to purchase three properties in Tehama County, California, which they used to operate marijuana grows.

The Bergenns laundered over $1.2 million in narcotics proceeds through structured financial transactions. The Bergenns also transferred additional amounts of marijuana proceeds from Connecticut to California through the United States Postal Service. As noted above, Arthur Bergenn used marijuana proceeds to purchase three properties in Tehama County, California, which the Bergenns used to cultivate marijuana. When investigators executed search warrants at these California properties, they seized substantial marijuana cultivation evidence from each property <u>and</u> several firearms. A prison sentence would appropriately reflect the seriousness of the defendant's criminal activity, as well as to promote respect for the law and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A).

## IV.     CONCLUSION

For the foregoing reasons, the Government submits that the Court should impose a sentence to a term of imprisonment.

>                             Respectfully submitted,
>
>                             JOHN H. DURHAM
>                             UNITED STATES ATTORNEY
>
>                             */s/ Geoffrey M. Stone*
>
>                             GEOFFREY M. STONE
>                             ASSISTANT UNITED STATES ATTORNEY
>                             Federal Bar No. CT 25326

### CERTIFICATE OF SERVICE

This is to certify that on February 21, 2019, a copy of the foregoing Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing.   Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.   Parties may access this filing through the Court's CM/ECF System.

>                             */s/ Geoffrey M. Stone*
>                             _____
>                             GEOFFREY M. STONE
>                             ASSISTANT UNITED STATES ATTORNEY